some means of making legal proof of the commission of the offense before condonation will be implied from cohabitation. Merrill v. Merrill, supra, and authorities there cited. The defendant did not have this evidence at the time of the alleged reconciliation. He had the wife's confession (if his evidence is credited), but this she had subsequently denied, and she reiterated the denial in writing at the time of the so-called condonation; and it was not until some time subsequent to this that the plaintiff made her admission to others, and aided in establishing the previous misconduct. Under this state of facts it is difficult to understand how it may be held that the adultery of the plaintiff was condoned, while her subsequent conduct in denying herself to her husband, and secretly meeting Neuendorffer, visiting strange physicians on mysterious errands, the nature of which she refused to divulge, was clearly sufficient to warrant a court of equity in refusing relief to the plaintiff. It appears from the undisputed evidence that the defendant is willing to take care of his children, and it would be anything but equitable to compel him to contribute to the support of this woman, whose favors are available only to a false friend of the defendant.

The judgment appealed from should be reversed, and a new trial granted, with costs to abide the final award of costs. All concur, except HIRSCHBERG, J., who dissents.

---

(34 Misc. Rep. 13.)

### PINE–COFFIN v. ERIE R. CO.

(Supreme Court, Special Term, New York County. February, 1901.)

INJUNCTION — STATEMENTS — INFORMATION AND BELIEF — SWORN DENIALS— KNOWLEDGE.

    Where, on an application by a stockholder for an injunction to restrain a railroad company from purchasing another railroad, all the statements in the complaint and moving affidavits, except as to the ownership of stock and residence of plaintiff, are on information and belief, and each of these statements which sets forth a fact is met by sworn denial on knowledge, the injunction should be denied.

Action by Richard Pine-Coffin against the Erie Railroad Company. Application of plaintiff for an injunction denied.

Thomas J. O'Neill, for plaintiff.

George F. Brownell (Francis Lynde Stetson, of counsel), for defendant.

FITZGERALD, J. Plaintiff applies for an injunction restraining the defendant from consummating the proposed purchase from J. Pierpont Morgan of the assets of the Pennsylvania Coal Company. The application is based on the complaint, in which it is alleged that the plaintiff is the owner of a trust certificate entitling him to 100 shares of the common stock of the Erie Railroad; that the holders of such trust certificate are entitled to all the privileges of stockholders, except the right to vote; that the Pennsylvania Coal Company is the owner of various coal mines, and also of the stock of the Erie & Wyoming Valley Railroad; that the defendant, the Erie Rail-

road, acquired a leasehold interest in that portion of the Erie & Wyoming Railroad extending from Honesdale to the city of Lacka- waxen; that, under the plan of reorganization of said Erie Railroad, J. Pierpont Morgan and his associates were made voting trustees of the said company, and that in December, 1900, J. Pierpont Morgan and his partners purchased the whole or a large majority of the capital stock of the Pennsylvania Coal Company, which carried with it the stock of the Erie & Wyoming Valley Railroad and the capital stock of the Delaware Valley & Kingston Railroad, for $27,600,000; that thereafter said Morgan and his partners proposed to sell to the Erie Railroad the property purchased from the Pennsylvania Coal Company for $32,000,000 bonds of the Erie Railroad and $5,000,000 stock of said company; that this arrangement has been ratified by the directors of the Erie Railroad, and is about to be submitted to the stockholders for approval and ratification. The plaintiff further states that he sues for himself and for all other stockholders simi- larly situated; that the property sought to be sold to defendant is not worth over $10,000,000, and that the same was offered a few years ago to the Philadelphia & Reading Railroad for $20,000,000. In addition to his verified complaint, plaintiff submits an affidavit in which he states that J. Pierpont Morgan is a director, and has been for many years one of the voting trustees, of the Erie Railroad Company, and that he controls all of the stock of said company, except 100 shares. Six affidavits were read in opposition:

The affidavit of J. Pierpont Morgan, which recites that he is not, and never was, a director of the Erie Railroad Company.

The affidavit of John W. Stern, counsel and also a stockholder of the Pennsylvania Coal Company, and one of the parties who con- ducted to a conclusion the negotiations with Messrs. J. Pierpont Mor- gan & Co. for the sale of all stock of the Pennsylvania Coal Company, the Erie & Wyoming Valley Railroad Company, and the Delaware Valley & Kingston Railroad, in which it is, among other things, set forth that:

"The transaction could have been carried through only for cash, and until after the conclusion of the transaction, and of the public offer of such prop- erty by Messrs. J. P. Morgan & Co. to the Erie Railroad Company, the financial ability of the Erie Railroad Company had not been established in such manner as to have induced myself or the principal vendors with whom I was associ- ated to consent to transfer such property for $37,000,000 in the said stock and bonds of the Erie Railroad Company. Upon my own knowledge, I would state that neither within a few years, nor at any time, was the same property which was sold to Messrs. J. P. Morgan & Co., or the property or stock of the Pennsylvania Coal Company, offered to the Philadelphia & Reading Railroad Company for $20,000,000, or for any other sum, nor was any offer of the prop- erty ever made to any others. * * * There never has been a time at which, under existing conditions, the property embraced in the sale to J. P. Morgan & Co. would have been sold for less than the price charged therefor."

Also the affidavit of William V. S. Thorne, which is in part as fol- lows:

"If the control of the properties had not been sold to Messrs. Morgan & Co., I believe that it would have been sold in the near future to other parties having interests adverse to the Erie Company, and that such sale would have resulted in great loss to the business of the Erie Company, and in a large reduction in the value of its securities and stock."

And the affidavit of Abram S. Hewitt, which contains the following paragraph:

"I believe that the purchase by the Erie Company of the stock of said above-mentioned companies as proposed is in the best interest of, and essential to the continued prosperity of, the Erie Railroad Company, and that the terms of the proposed purchase from Messrs. J. P. Morgan & Co. are fair and reasonable, both with respect to purchase price and time and manner of payment, and that the acquisition by the Erie Railroad Company of the control of these properties would not have been possible except through the intervention of, and purchase by, Messrs. J. P. Morgan & Co."

In addition to these is the affidavit of Christopher Costello to the following effect:

"I am a clerk in the office of J. P. Morgan & Co., who are the transfer agents of the stock trust certificates of the voting trustees of the Erie Railroad Company. I have charge of the ledgers in which are recorded the names and the holdings of the several holders of such stock trust certificates. I have made careful examination of the common-stock ledger, and also of the records of later transfers (not yet posted), and I am unable to find therein any entry that Richard Pine-Coffin is the holder of any common-stock trust certificates of the voting trustees of the Erie Railroad Company."

In reply to all these sworn denials submitted in opposition to this motion, I find an unsigned memorandum which reads:

"I have been unable, with the utmost effort, to obtain the affidavit of any of the then officers of the Philadelphia & Reading Railroad Company as to the offer made to them to acquire the same assets now proposed to be sold to the Erie for many millions less."

This statement is an absolute abandonment of a most material averment in the complaint, and, in the light of Mr. Sterling's denial, neither the memorandum nor the original averment can, of course, be considered. In reply to the affidavit of Mr. Costello, and to meet certain reflections indulged in in the argument as to the good faith of this proceeding, plaintiff submits an additional affidavit, verified February 11, 1901, in which he states that he resides at Portledge, Bideford, North Devon, England; that he is the owner of a trust certificate entitling him to 100 shares of the common stock of the Erie Railroad Company; that he is unable to give the number of such certificate, and that it was bought for him, through his brokers in London (whom he does not name), about January 20, 1901. All the statements except as to the ownership of the stock and the residence of plaintiff in the moving affidavits and the complaint are upon information and belief. Each of these statements which sets forth a fact is met by a sworn denial upon knowledge. The court would clearly not be justified upon such a record in granting an injunction.

Application denied.